UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:10-CR-43-6-F

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| ROBERT STACY MCNEAL, | ) | |

This matter is before the court on the defendant Robert Stacy McNeal's motion for acquittal pursuant to Rule 29. The Government has not seen fit to file a written opposition to McNeal's motion, and the time to do so has passed. This matter therefore is ripe for disposition.

## I. Procedural History

The jury trial McNeal commenced on December 15, 2010, in this court. At the close of the Government's case-in-chief, McNeal moved for a judgment of acquittal as to the sole count in the Superceding Indictment. The court denied the motion. On December 16, 2010, the jury returned a verdict of guilty on the sole count of the Superseding Indictment, and McNeal renewed his Rule 29 motion. To ensure that the court reporter had sufficient time to prepare the trial transcript, the court gave McNeal until January 31, 2011, to file his memorandum in support of his renewed motion for acquittal.

On January 25, 2011, McNeal filed a motion for extension of time [DE-177] because the trial transcript was not completed. The court allowed the motion, and allowed McNeal to file a memorandum on or before February 18, 2011. The court reporter filed the transcript [De-179] on February 9, 2011, and McNeal filed his memorandum [DE-184] on February 18, 2011. The Government did not file a response thereto.

## II. Analysis

### A. Standard

As set out by the Fourth Circuit, the standard for deciding a Rule 29 motion for a judgment of acquittal pursuant to the Federal Rules of Criminal Procedure is "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." *United States v. MacCloskey*, 682 F.2d 468, 473 (4th Cir. 1982). When assessing the sufficiency of the trial evidence, the court " 'must view the evidence and the reasonable inferences drawn therefrom in the light most favorable to the Government.' " *United States v. Santana*, No. 2:06cr172, 2008 WL 276411, at *1 (E.D. Va. Jan. 28, 2008) (quoting *United States v. Burgos*, 94 F.3d 849 (4th Cir. 1996)). The relevant question for the court is whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Fisher*, 912 F.2d 728, 730 (4th Cir. 1990)(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))(emphasis in original).

### B. Statute

In his motion for acquittal, McNeal moves for acquittal as to Count One of the Superceding Indictment, which charged:

> On or about April 1, 2010, in the Eastern District of North Carolina, ROBERT STACY MCNEAL, also known as "Stacy", the defendant herein, having been convicted of a crime punishable by imprisonment for a term exceeding one (1) year, did knowingly possess in and affecting commerce, firearms, to wit: a Taurus PT-22 handgun and a shotgun, in violation of Title 18, United States Code, Sections 922(g)(1) and 924.

In order to overcome a Rule 29 motion as to this count, and as this court instructed the jury

2

in this case, the Government was required to present evidence sufficient for a rational juror to find beyond a reasonable doubt: 1) that at time of time of the offense charged, the defendant had been convicted of a felony; 2) that the defendant knowingly possessed a firearm as charged in the Superceding Indictment, and 3) that the firearm traveled in interstate commerce at some point. The defense argues that the Government failed to meet its evidentiary burden as to Count One. Specifically, McNeal argues that there is insufficient evidence that he possessed the Taurus PT-22 handgun (hereinafter "the handgun"). McNeal also argues the Government presented insufficient evidence that the shotgun ever traveled or was otherwise involved in interstate commerce.

C. **Sufficiency of the evidence as to the handgun**

Viewed in the light most favorable to the Government, *see United States v. Sloley*, 19 F.3d 149, 152 (4th Cir. 1994), the evidence presented at trial showed the following: on April 1, 2010, McNeal and a co-defendant, Kenneth Coats, Jr. ("Coats"), drove to Dunn, North Carolina, to pick up some marijuana. Coats testified that McNeal was driving a Dodge Charger which he owned, and Coats was riding as a passenger. According to Coats, after they picked up the marijuana, the two then drove to pick up the handgun. Specifically:

> A. WE RIDE AROUND GO GET – GO PICK UP THE .22.
>
> Q. YOU RODE AROUND AND PICKED UP THE .22?
>
> A. (WITNESS NODS HEAD.)
>
> Q. OKAY. WHERE IN DUNN DID YOU GET THAT FROM, THE .22?
>
> A. RIGHT THERE BY THE PARK. I FORGOT THE NAME OF THE PARK.
>
> Q. OKAY. AND WHO DID YOU – WHO DID THAT .22 COME FROM?

3

A. I DON'T RECALL THE DUDE'S NAME.

Q. OKAY. DO YOU KNOW HIM?

A. NO, M'AM.

Q. ALL RIGHT. WHO ARRANGED TO GET THE GUN? DID YOU ARRANGE FOR IT OR DID STACY ARRANGE FOR IT?

A. STACY.

Q. AND WHERE DID IT HAPPEN? WHERE DID YOU–WHERE DID THE GUN–HOW DID THE GUN GET INTO THE WHITE DODGE CHARGER?

A. THAT DUDE GOT IN THE BACK SEAT AND HANDED IT UP FRONT.

Q. HANDED IT UP FRONT TO WHO?

A. HE HANDED IT OR HE PASSED IT TO ME.

. . .

Q. DID YOU SEE MONEY EXCHANGE HANDS FOR IT?

A. NO MA'AM.

Q. WHAT HAPPENED WHEN YOU GOT THE GUN?

A. HE PUT IT UNDER THE SEAT.

Q. OKAY. AND WERE YOU INVOLVED IN ANY CONVERSATION ABOUT PURCHASING THE GUN?

A. HUH-UH.

Official Transcript [DE-179] at pp. 27-28.

Coats and McNeal later drove to a trailer, where Coats fired the handgun at the trailer approximately four times. McNeal fired a sawed-off shotgun at the trailer once. The two fled the

4

scene, and eventually went to Wal-Mart, where Lieutenant Angela Hinson of the City of Dunn Police Department stopped McNeal's vehicle. Lt. Hinson and other officers conducted a felony vehicle stop. During the stop, Lt. Hinson retrieved the handgun from under the right front passenger seat, where Coats was riding.

McNeal argues that the foregoing evidence is insufficient to establish that he was in possession of the handgun. Possession, of course, can take the form of constructive possession. Constructive possession exists when a person has the power to exercise dominion and control over an item, and has knowledge of the item's presence. *See United States v. Schocket*, 753 F.2d 336, 340 (4th Cir. 1985). Constructive possession can be established by circumstantial evidence. *See United States v. Laughman*, 618 F.2d 1067, 1077 (4th Cir. 1980).

McNeal argues that this case is analogous to *United States v. Blue*, 957 F.2d 106 (4th Cir. 1992), in which the Fourth Circuit reversed a § 922(g)(1) conviction for insufficiency of the evidence of constructive possession. In *Blue,* the government relied on two pieces of evidence to establish constructive possession of a firearm: 1) a law enforcement officer's testimony that he saw Blue, a passenger in a car, "dip" his shoulder as the officer approached the car, and 2) the officer's discovery of a revolver underneath the passenger seat. *See id.* at 107-08. The Fourth Circuit held that this evidence, alone, was insufficient, reasoning that " '[t]he mere proximity of a weapon . . . goes only to its accessibility, not to the dominion and control which must be proved to establish possession.' "*Id.* at 108 (*quoting United States v. Soto*, 779 F.2d 558, 560 (9th Cir. 1986)). The Fourth Circuit also observed that the government failed to introduce physical evidence which would link Blue to the gun, evidence that Blue had owned the gun or had been seen with the gun previously, or evidence that Blue owned the car or had been in the car before. *Id.* at 108. "Without more evidence

5

that that proffered by the government," the Fourth Circuit concluded it could not sustain Blue's conviction. *Id.* However, the court also emphasized "that the facts of this case fall outside, but just barely, the realm of quantum of evidence necessary to support a finding of constructive possession." *Id.*

*Blue* is distinguishable from the case at bar. Here, the evidence did not consist solely of McNeal's proximity to the handgun. Rather, the evidence would allow a rational trier of fact to find that McNeal arranged for the transfer of the handgun, and drove his own car to the location where the transfer took place. Although McNeal was not the sole occupant of his car, a fact highlighted by McNeal, this fact is not dispositive. It cannot seriously be disputed that a trier of fact could find that McNeal had the power to exercise dominion and control over the handgun. Moreover, although McNeal contends that Coats testified that *Coats* placed the handgun under the passenger seat, a trier of fact could find from the testimony that *McNeal* was the person who placed the handgun there. *See* Original Transcript [DE-179] at p. 28 ("Q: WHAT HAPPENED WHEN YOU GOT THE GUN? A: *HE* PUT IT UNDER THE SEAT.")(emphasis added). It is well settled that "where the evidence supports differing reasonable interpretations, the jury will decide which interpretation to accept." *United States v. Moye*, 454 F.3d 390, 395 (4th Cir. 2006). Accordingly, the evidence was such that a jury could find that McNeal arranged for the procurement of the handgun, drove his car to obtain the handgun, and while in his own vehicle, placed the handgun under the passenger seat. In sum, the evidence in this case goes beyond that which was presented in *Blue,* and was in fact sufficient evidence from which a rational trier of fact could find that McNeal had both knowledge of the handgun, and had the power to exercise dominion and control over the firearm.

6

Case 7:10-cr-00043-F   Document 201   Filed 03/16/11   Page 6 of 9

### D. Sufficiency of the evidence as to the shotgun

McNeal also argues that the Government presented insufficient evidence that the shotgun he was charged with possessing ever traveled or was otherwise involved in interstate commerce.

In the light most favorable to the Government, the evidence presented at trial showed the following: the shotgun allegedly possessed by McNeal was never recovered. Special Agent Tim Graden, with the Bureau of Alcohol, Tobacco and Firearms, the firearm and ammunition interstate nexus expert in the Raleigh field office, testified that since December 2005, he had identified and researched ammunition and firearms in over 600 cases. With regard to the shotgun, Graden testified on direct examination as follows:

> Q. ARE THERE ANY SHOTGUNS MANUFACTURED WITHIN THE STATE OF NORTH CAROLINA?
>
> A. NOT THAT I'M AWARE OF.
>
> Q. OKAY. DURING THE NUMBER OF TIMES THAT YOU'VE TESTIFIED AS AN EXPERT IN THE OVER –I'M SORRY, WAS IT 400 FIREARMS THAT YOU'VE EXAMINED? MORE THAN THAT.
>
> A. 600 CASES SINCE DECEMBER 2005.
>
> Q. HAVE YOU EVER COME ACROSS A SHOTGUN THAT WAS MANUFACTURED WITHIN THE STATE OF NORTH CAROLINA?
>
> A. NO.

Original Transcript [DE-179] at p. 165. On cross-examination, Graden testified:

> Q. IS IT POSSIBLE THAT SOMEONE COULD MAKE A GUN THAT LOOKED LIKE ANOTHER GUN?

7

> A. YES.
>
> Q. AND I GUESS MY QUESTION IS IF PEOPLE CAN COUNTERFEIT MONEY, COULD THEY COUNTERFEIT A GUN?
>
> A. YES.
>
> Q. AND SO, IS IT POSSIBLE THAT SOMEONE COULD MAKE A GUN THAT LOOKED LIKE IT WAS MANUFACTURED OUT OF THE STATE, BUT ACTUALLY IT WASN'T?
>
> A. YES.
>
> Q. AND IS IT POSSIBLE TO MAKE A GUN? I MEAN, IS IT POSSIBLE FOR A PERSON IN A – IF THEY HAVE SOME FANCY SETUP IN THEIR GARAGE, COULD THEY MAKE A GUN?
>
> A. YES.

Original Transcript [DE-179] at p. 167. McNeal argues this is insufficient to establish the "nexus" requirement.

McNeal recognizes that the Government may prove the interstate nexus element by offering proof that the firearm was manufactured in one state and transported to another. *See United States v. Crump*, 120 F.3d 462, 466 (4th Cir. 1997). McNeal argues, however, that Graden's testimony does not offer sufficient evidence that the shotgun he possessed was manufactured outside the state of North Carolina. In support of his argument, McNeal relies upon *United States v. Aikens*, 153 Fed. Appx. 219, 226 (4th Cir. 2005)(per curiam), in which the Fourth Circuit vacated a § 922(g)(1) conviction for failing to establish the interstate nexus requirement. In *Aikens*, however, the government failed to introduce *any* evidence that any of the thirty-one firearms he was charged with

8

possessing had been shipped or transported in interstate commerce. *Id.* at p. 226. Indeed, the government conceded on appeal that it failed to introduce such evidence. *Id.*

Here, however, the Government did offer proof that there are no shotgun manufacturers within the state of North Carolina. Taken in the light most favorable to the Government, this is sufficient evidence from which a trier of fact could find that the shotgun possessed by McNeal was not manufactured in North Carolina, and therefore traveled in interstate commerce. This is not like *Aikens* where the Government failed to offer any proof. Although Graden's "testimony leaves open some possibility" that the shotgun was made by an individual in North Carolina, the Government is *not* required to offer proof beyond all doubt. *See United States v. Thompson*, 47 F. Supp. 2d 658, 663 (D.S.C. 1999), *aff'd*, No. 99-4704, 2000 WL 148117 at * 2 (4th Cir. Nov. 2, 2000)("[W]e agree with the district court's conclusion that Kelly's admission that there was a possibility that the revolver may have been manufactured in South Carolina did not compel the conclusion that the Government failed to prove its case."). In this case, the court finds the evidence proffered to be sufficient.

### III. Conclusion

For the foregoing reasons, Defendant McNeal's motion for acquittal is DENIED.

SO ORDERED. This the  16th  day of March, 2011.

James C. Fox
Senior United States District Judge

9